**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

JOHNNY L. WILLIAMS,

     Petitioner,                 CASE N0. 2:16-CV-12042
                                    HONORABLE ARTHUR J. TARNOW
v.                             UNITED STATES DISTRICT JUDGE

SHANE JACKSON,

     Respondent,

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*

Johnny L. Williams, ("Petitioner"), incarcerated at the Brooks Correctional

Facility in Muskegon Heights, Michigan, filed a petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2254, challenging his convictions for second-degree

murder, Mich. Comp. Laws § 750.317; and felony-firearm, Mich. Comp. Laws §

750.227b.  For the reasons that follow, the petition for writ of habeas corpus is

DENIED.

## I.  Background

Petitioner was originally charged with first-degree murder and felony-

firearm.  Petitioner was convicted by a jury in the Wayne County Circuit Court of

the lesser offense of second-degree murder and guilty as charged of felony-

firearm.  This Court recites verbatim the relevant facts relied upon by the

Michigan Court of Appeals, which are presumed correct on habeas review

pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th

Cir. 2009):

> Defendant's convictions arose from the fatal shooting of Henry Morgan at a motorcycle club in Detroit. Morgan, defendant, and defendant's fiancée, Tiffany Pritchett, had gathered with several others for an event at the club. Testimony indicated that defendant and Morgan were involved in an altercation, and that club members separated the two men. Later the same night the men had another argument, and defendant shot Morgan once in the abdomen. Following the shooting, defendant left the scene with Pritchett. Defendant turned himself in to the police 15 days later. The defense theory at trial was that defendant acted in self-defense. Defendant testified that immediately before the shooting, Morgan pursued him and reached for a gun. Pritchett corroborated defendant's testimony to the extent that she claimed to observe Morgan reach toward his back or waist-area before defendant shot him.
>
> ********************************************************************************
>
> Here, there was trial testimony that defendant left the scene by jumping in Pritchett's van and driving away with her. When the police arrived soon after the shooting, there was no gun on the premises and both defendant and Pritchett had left. Although defendant did not directly flee from police at the scene, he admittedly left the scene and did not contact the police for 15 days, even though he was aware that he was wanted in connection with the shooting.

*People v. Williams*, No. 299484, 2012 WL 164094, at * 1, 4 (Mich. Ct. App. Jan. 19, 2012).

Petitioner's conviction was affirmed on appeal. *Id.*

Petitioner filed an application for leave to appeal in the Michigan Supreme

Court. The Michigan Supreme Court granted leave to appeal limited to the issue

whether Offense Variable 19 of the Michigan Sentencing Guidelines had been

misscored. *People v. Williams*, 493 Mich. 876, 821 N.W.2d 570 (2012). After oral argument the Supreme Court vacated its earlier order and denied leave to appeal because it was no longer persuaded that the questions presented should be reviewed. *People v. Williams*, 493 Mich. 965, 828 N.W.2d 684 (2013).

Petitioner filed a post-conviction motion for relief from judgment, which was denied. *People v. Williams*, No. 09-031564-01-FC (Wayne Cir. Ct. Sept. 22, 2014). The Michigan appellate courts denied petitioner leave to appeal. *People v. Williams*, No. 324906 (Mich. Ct. App. May 19, 2015); *lv. den.* 499 Mich. 914, 877 N.W. 2d 900 (2016).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Mr. Williams was denied his Sixth and Fourteenth Amendment rights to a fair trial and due process of law through the prosecutor's misconduct, including shifting the burden of proof and improper questioning and argument.

II. The trial court's assessment of five points for PRV 2 [prior low severity conviction] were error resulting in a higher guidelines' range than was supported by the record, and the sentence imposed thus was an unreasonable departure necessitating reversal and re-sentencing.

III. Defendant Williams is entitled to relief from judgment where defense counsel failed to specifically raise the issue of self-defense under the 2006 Self-Defense Act, ("SDA") MCL 780.971 et. seq., relying instead on the common law which not only deprived defendant [of] the opportunity to put on a substantial and effective defense, but so prejudiced him as to deny his right to a fair trial and the Sixth Amendment right to effective assistance of counsel.

IV. Defendant Williams is entitled to relief from judgment where defense counsel's failure to call a known favorable eyewitness to the shooting supporting the defense of self-defense, denied defendant not only his

3

Sixth Amendment right to the effective assistance of counsel, and a fair trial, but also his vested due process rights under the compulsory process of the Sixth Amendment to present his own witnesses to establish a meaningful defense.

V. Defendant Williams is entitled to relief from judgment where the prosecution failed to present sufficient evidence to disprove defendant's claim of self-defense.

VI. Defendant Williams is entitled to relief from judgment where the prosecution failed to present sufficient evidence to support defendant's second-degree murder conviction.

VII. Defendant is entitled to relief from judgment where the prosecutor knowingly used false testimony to obtain a tainted conviction, and failed to correct the false and misleading facts known to the jury, all in violation of defendant's Fourteenth Amendment rights under the federal and state constitutions.

VIII. Defendant Williams is entitled to relief from judgment where his conviction is against the great weight of the evidence.

IX. Defendant Williams is entitled to relief from judgment because his vested right to a fair and impartial trial was violated where the trial court erroneously instructed the jury to consider whether defendant could have safely retreated prior to using deadly force.

X. Defendant Williams is entitled to relief from judgment where the trial court abused its discretion when it denied defendant's motion for directed verdict on the charge of first-degree premeditated murder as the prosecution failed to present sufficient evidence of premeditation.

XI. Defendant Williams is entitled to relief from judgment where appellate counsel's performance violated his Sixth Amendment right to the effective assistance of counsel on direct appeal as guaranteed by the Sixth Amendment.

XII. Petitioner was denied his fundamental protections to a fair trial by and through the cumulative effect of error that took place at the hands of the trial court, the prosecution, defense counsel and appellate counsel.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as

'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

The Court is aware that petitioner raised his third through twelfth claims in his post-conviction motion for relief from judgment. The judge denied these claims in part because petitioner failed to show cause and prejudice, as required by M.C.R. 6.508(D)(3), for not raising these claims on his appeal of right. Although the state judge court judge mentioned M.C.R. 6.508(D)(3), the AEDPA's deferential standard of review would nonetheless apply to the judge's opinion because he alternatively rejected the claims on the merits. *See Moritz v. Lafler*, 525 F. App'x. 277, 284 (6th Cir. 2013). [1]

### III. Discussion

### A. Claim # 1. The prosecutorial misconduct claims.

Petitioner argues that he was denied a fair trial because of prosecutorial misconduct.

---

[1] Respondent urges this Court to deny these claims on the ground that they are procedurally defaulted pursuant to M.C.R. 6.508(D)(3). Petitioner argues in his eleventh claim that appellate counsel was ineffective for failing to raise these claims on the appeal of right. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claims, it would be easier to consider the merits of these claims. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004)(citing *Bowling v. Parker*, 344 F. 3d 487, 512 (6th Cir. 2003)).  A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. at 643-45.  In order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012)(quoting *Harrington*, 562 U.S. at 103).

Petitioner first contends that the prosecutor committed misconduct by asking Ms. Pritchett whether petitioner had a "jealous heart."

The Michigan Court of Appeals rejected this claim:

"[A] prosecutor's good-faith effort to admit evidence does not constitute misconduct."  Here, defendant has not shown that the prosecutor acted in bad faith.  Defendant's demeanor was a matter of concern to both parties in light of the defense theory that defendant acted in self-defense.  Defense counsel noted during opening statement that

defendant was calm on the evening in question. Defense counsel asserted that in contrast to defendant's calm demeanor, Morgan was aggressive, drunk, and furious, and had a "gun mentality." Given the parties' theories, defendant has not demonstrated that the questions concerning his temper and jealousy on the night in question were improper. Viewed in context, the challenged questions were not intended to inject improper character evidence, but rather sought information that was both relevant and responsive to the defense theory. Regardless, Pritchett denied that defendant had a jealous heart or a violent temper, so reversal is not warranted on this issue.

*People v. Williams*, No. 299484, 2012 WL 164094, at * 1 (internal citation omitted).

Although petitioner framed his claim as a prosecutorial-misconduct challenge, "it amounts in the end to a challenge to the trial court's decision to allow the introduction of this evidence." *Webb v. Mitchell*, 586 F. 3d 383, 397 (6th Cir. 2009). "A prosecutor may rely in good faith on evidentiary rulings made by the state trial judge and make arguments in reliance on those rulings." *Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008). For a prosecutor's cross-examination of a witness to rise to the level of prosecutorial misconduct, a defendant is required to show intentional misconduct or reckless disregard for the truth on the part of the prosecutor. *See U.S. v. Sexton,* 119 F. App'x. 735, 750 (6th Cir. 2005)*; vacated in part on other grds,* 2005 WL 6011238 (6th Cir. Apr. 4, 2005). The questions posed by the prosecutor to Ms. Pritchett about petitioner's temper and possible jealousy were relevant to challenging the defense theory that petitioner was calm and passive on the night of the shooting, so as to rebut his self-defense claim. A prosecutor does not commit misconduct

by asking witnesses relevant questions. *See Slagle v. Bagley,* 457 F. 3d 501, 518 (6th Cir. 2006). Petitioner's claim is without merit.

Petitioner next argues that the prosecutor improperly sought to elicit irrelevant character evidence that petitioner manipulated people, when she asked petitioner if he "used people" or obtained money from several women.

The Sixth Circuit has noted that there are no Supreme Court cases which support the proposition that a prosecutor's questions that simply call for answers that are inadmissible due to relevancy constitute prosecutorial misconduct that rises to the level of a federal due process violation. *See Wade v. White,* 120 F. App'x. 591, 594 (6th Cir. 2005). Thus, the fact that the prosecutor attempted to elicit irrelevant evidence would not entitle petitioner to habeas relief. *Id.* In any event, the trial judge sustained defense counsel's objection to the questions and later instructed the jury that the lawyers' questions and comments are not evidence, that the case should be decided on the basis of the evidence, and that the jury should follow the judge's instructions. *People v. Williams*, 2012 WL 164094, at * 2. These instructions sufficiently removed any taint from the prosecutor's questions.

Petitioner finally argues that the prosecutor improperly commented on petitioner's right to remain silent with the following remarks:

> Then he wants you to believe that he is the victim in this case. [Defendant] is the victim in this case, that he's an innocent man because his actions were justified. He reasonably believes that his life

9

was in danger.  He wanted to wait for the police.  He wanted to wait for the police outside.  That's what he says, but do his actions suggest that in any way?  He said he stood outside the club for less than a minute, that he ordered his girlfriend to drive away, that she did so, that the police were coming in their direction, but yet he doesn't go to the police.  He doesn't tell her to take him to where they are.  The reasons he left was because he was scared because Narco was coming after him, but he still doesn't have anyone take him to the police station until fifteen days later.

Ladies and gentlemen, an innocent man, a victim is someone that's going to not run out a front door and stay gone for fifteen days.  An innocent man is someone that's going to want the police and everyone to know my life was in danger, my life was threatened—you need to know what happened.

* * *

If he was really a victim and wanted, as he said, wanted the police initially to know what happened, he would have went back, and he would have told them.

(Tr. 4/27/10, pp. 24-26).

The Michigan Court of Appeals rejected the claim:

The trial court sustained defendant's objections to these remarks and ruled that defendant "has an absolute right not to make any statements" and "has no obligation to talk to the police."  To the extent that the challenged comments here could be viewed as improper, the trial court's instructions to the jury cured any error.

*People v. Williams*, 2012 WL 164094, at * 2 (internal citation omitted).

It is a violation of the Due Process clause of the Fourteenth Amendment

for the prosecution to use a defendant's post-arrest silence to impeach

exculpatory testimony given by the defendant at trial. *Doyle v. Ohio*, 426 U.S.

610, 619 (1976).  However, a single isolated reference to a defendant's exercise

of his right to remain silent does not deprive a criminal defendant of a fair trial when the judge explicitly sustains an objection to the only prosecutorial question touching upon a defendant's post-arrest silence, the prosecutor engages in no further questioning or argument with respect to the defendant's silence, and the judge specifically advises jury that it should disregard any questions to which an objection was sustained. *See Greer v. Miller,* 483 U.S. 756, 764-65 (1987).

In the present case, there was only one isolated reference to petitioner's refusal to speak with the police. The judge immediately sustained an objection to the remark. The prosecutor never repeated this reference during trial. The judge instructed the jurors not to consider any evidence that had been stricken. Because there was only one isolated reference to petitioner's exercise of his right to remain silent, and the judge sustained an objection to the remark and gave a cautionary instruction to the jury, petitioner is not entitled to habeas relief on his first claim.

### B. Claim # 2. The sentencing guidelines claim.

Petitioner claims that the trial judge incorrectly scored his sentencing guidelines range.

Petitioner's claim that the state trial court incorrectly scored or calculated his sentencing guidelines range under the Michigan Sentencing Guidelines is not a cognizable claim for federal habeas review, because it is basically a state law claim. *See Tironi v. Birkett*, 252 F. App'x. 724, 725 (6th Cir. 2007)*; Howard v.*

*White,* 76 F. App'x. 52, 53 (6th Cir. 2003). Errors in the application of state sentencing guidelines cannot independently support habeas relief. *See Kissner v. Palmer*, 826 F. 3d 898, 904 (6th Cir. 2016). Petitioner is not entitled to relief on his second claim.

**C. Claims # 3 and # 4. The ineffective assistance of trial counsel claims.**

Petitioner alleges he was denied the effective assistance of trial counsel in his third and fourth claims.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." *Strickland,* 466 U.S. at 694.

Petitioner in his third claim alleges that trial counsel was ineffective for failing to assert petitioner's claim of self-defense under Michigan's Self-Defense Act ("SDA"), relying instead on the common law doctrine of self-defense. Petitioner claims that he was prejudiced because the SDA does not require a person who uses deadly force to retreat, as the common law self-defense doctrine requires, but permits a person to "stand his ground."

Petitioner raised this claim in his post-conviction motion for relief from judgment. The judge denied petitioner's claim:

> Defendant also argues that his counsel was ineffective for proceeding with the theory of self-defense under the common law rather than under the Self-Defense Act, MCL 780.971, et seq (the Act). Defendant contends that there is no duty to retreat under the Act. The Court disagrees.
>
> Under the common law, generally, the killing of another person in self-defense by one who is free from fault is justifiable homicide if, under all the circumstances, he honestly and reasonably believes that he is in imminent danger of death or great bodily harm and that it is necessary for him to exercise deadly force. *People v Riddle*, 467 Mich116, 119; 649 NW2d 30 (2002). "The necessity element of self-defense normally requires that the actor try to avoid the use of deadly force if he can safely and reasonably do so, for example by applying nondeadly force or by utilizing an obvious and safe avenue of retreat." *Id* [Footnote omitted]. Thus, under common law, a person has a duty to attempt to avoid the use of deadly force by either using non deadly force or by retreating to a safe place.
>
> Under the Act, MCL 780.971, et seq, "the Legislature codified the circumstances in which a person may use deadly force in self-defense or in defense of another person without having the duty to retreat." *People v Dupree*, 486 Mich 693, 708; 788 NW2d 399 (2010). The Act

provides in relevant part:

> (1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:

> (a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.

MCL 780.972(1)(a).

Hence, three conditions must exist for the use deadly force without a duty to retreat to be proper: (1) the person using deadly force must not be committing a crime at the time of using deadly force; (2) the person using deadly force is in a place that he or she has a legal right to be; and (3) the person using deadly force must have an honest and reasonable belief that deadly force is necessary to prevent imminent death or great bodily harm to himself or herself or to another person. Furthermore, the Act also specifies that, other than the conditions enumerated in MCL 780.972, the Act "does not modify the common law of this state ...regarding the duty to retreat before using deadly force or force other than deadly force." MCL 780.973.

Thus, for Defendant to establish that he had no duty to retreat, he was required to demonstrate to the jury that he had right to be in the motorcycle club, that he was not engaged in the commission of a crime at the time that he used deadly force, and that he honestly and reasonably believed that deadly force was necessary to prevent death or great bodily harm to himself or another person. Whether under the common law or under the Act, Defendant must still demonstrate, at the very least, that his belief was honest and reasonable that deadly force was necessary to prevent imminent death or great bodily harm to him or to another person. Defendant's contention that proceeding with his claim of self-defense as justification for killing under the common law rather than under the Act constitutes ineffective assistance of counsel is without merit because the Act does not afford unconditional permission to use deadly force without any duty to retreat. Therefore,

counsel cannot be deemed ineffective for proceeding under a common law self-defense theory rather than a self-defense theory under the Act.

*People v. Williams*, No. 09-031564-01-FC, Slip. Op. at * 6–8.

Petitioner failed to show that he was entitled to invoke the Self–Defense Act to the facts of his case. The SDA "modified the common law's duty to retreat that was imposed on individuals who were attacked outside their own home or were not subjected to a sudden, fierce, and violent attack." *See People v. Guajardo*, 300 Mich. App. 26, 35, 832 N.W. 2d 409 (2013). The SDA created "a new substantive right, i.e., the right to stand one's ground and not retreat before using deadly force in certain circumstances in which a duty to retreat would have existed at common law." *See People v. Conyer*, 281 Mich. App. 526, 530, 762 N.W. 2d 198 (2008). One of the conditions for "standing one's ground" and not retreating is that the person who uses deadly force "has not or is not engaged in the commission of a crime at the time he or she uses deadly force." Mich. Comp. Laws § 780.972(1).

Defense counsel could have reasonably determined that petitioner was not entitled to assert a "stand your ground" defense under the SDA because petitioner had been the initial aggressor when he punched Mr. Morgan earlier in the evening. Petitioner also committed the felony offense of carrying a concealed weapon, which also would have precluded him under Mich. Comp. Laws § 780.972(1) from asserting his right to stand his ground before using

deadly force.  Under the circumstances, counsel did not act deficiently in failing to assert a "stand your ground" defense under the SDA and instead relying on the common law self-defense doctrine.

More importantly, petitioner is unable to show that he was prejudiced by counsel's decision to assert a self-defense argument under common law, because even under the common law there is no duty for a person to retreat prior to using deadly force if he or she cannot safely do so, nor is a person required to retreat from a sudden fierce and violent attack, nor from an attacker he or she reasonably believes is about to use a deadly weapon. *See People v. Riddle*, 467 Mich. 116, 119, 649 N.W. 2d 30 (2002).  The jury, in fact, was instructed that petitioner had no duty to retreat in such a circumstance. See Claim # 9, *infra.*  Because the common law self-defense doctrine itself permitted petitioner to stand his ground in one of these scenarios, *See Riddle,* 467 Mich. at 119, petitioner was not prejudiced by counsel's decision to forego the provisions of the Self-Defense Act and instead assert petitioner's self-defense argument at common law.  Petitioner is not entitled to relief on his third claim.

In his fourth claim, petitioner claims that trial counsel was ineffective for failing to call Veda Mauldin as a defense witness to support his self-defense claim.

On the third day of trial, outside the presence of the jury, petitioner's defense attorney informed the judge he had a witness, Ms. Veda Mauldin, who

had been interviewed but was reluctant to testify after being threatened with perjury and having her children taken away from her. (Tr. 4/1/2010, pp. 151–52). Defense counsel indicated he was already having trouble with Ms. Mauldin appearing to testify and he asked the court to admonish "them." (*Id.*). Mauldin testified outside the jury's presence. Mauldin acknowledged she had spoken with defense counsel and had been hesitant to testify. Mauldin said she had been interviewed and the word perjury had been mentioned. (*Id.,* p. 154). Mauldin testified that she had received threatening phone calls from unknown callers about her children being taken away, although she did not know who the caller was. (*Id.,* pp. 155–56). Mauldin felt the Investigator Simon was accusing her of lying about what she saw. The judge asked Ms. Mauldin if she would testify and she replied "yes." Defense counsel asked the judge if he would consider allowing Maudlin to testify with the courtroom closed. The judge denied the request but said he would revisit the issue on Monday. (*Id.* at 158-61). When trial resumed the following week, Ms. Mauldin was not called as a witness.

The judge rejected petitioner's claim on post-conviction review:

Defendant contends that Mauldin would have testified that she stood approximately five feet from Defendant when she allegedly saw Morgan behave aggressively toward Defendant and that Morgan appeared to reach for a weapon. Defendant has not demonstrated how the outcome of the case would have been different had his counsel presented Mauldin as a witness when a similar statement was made by another witness and when numerous other witnesses gave testimony about the events surrounding the shooting. As explained above, the decision of whether or not to present a particular witness

17

is a matter of trial strategy. Further, the failure to investigate and present a particular witness cannot be considered ineffective assistance of counsel unless Defendant can show that the failure to present the witness deprived him of a defense. Because the issue of self-defense was given to the jury for consideration, Defendant was not deprived of asserting self-defense as justification for the killing. Thus, counsel's decision not to present Veda Mauldin as witness was a matter of trial strategy and cannot be considered ineffective assistance.

*People v. Williams*, No. 09-031564-01-FC, Slip. Op. at * 6 (internal citation omitted).

Petitioner is not entitled to relief for two reasons.

First, petitioner failed to attach any affidavit from Ms. Mauldin to his post-conviction pleadings in the state trial and appellate courts, nor has he provided this Court with any affidavit from Ms. Mauldin concerning her proposed testimony and willingness to testify on the petitioner's behalf. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998). By failing to present any evidence to the state courts in support of his ineffective assistance of claim, petitioner is not entitled to an evidentiary hearing on his ineffective assistance of counsel claim with this Court. *See Cooey v. Coyle*, 289 F. 3d 882, 893 (6th Cir. 2002)(citing 28 U.S.C. § 2254(e)(2)(A)(ii)). Petitioner has offered, neither to the Michigan courts nor to this Court, any evidence beyond his own assertions as to whether Ms. Mauldin would have been able to testify and what her testimony would have been. In the

absence of such proof, petitioner is unable to establish that he was prejudiced by counsel's failure to call Ms. Mauldin to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. *See Clark v. Waller,* 490 F. 3d 551, 557 (6th Cir. 2007).

Secondly, petitioner's counsel called Ms. Tiffany Pritchett and petitioner to testify in support of petitioner's claim of self-defense. The alleged ineffectiveness of counsel in failing to call Ms. Mauldin to testify in support of petitioner's self-defense claim was not prejudicial where her testimony would have been merely cumulative to testimony by petitioner and Ms. Pritchett that he had shot Mr. Morgan in self-defense. *See Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 607 (E.D. Mich. 2001). Petitioner is not entitled to relief on his fourth claim.

**D. Claims # 5, # 6, # 8, and # 10. The sufficiency of evidence claims.**

The Court consolidates petitioner's four related sufficiency of evidence claims.

In his fifth claim, petitioner contends that the prosecutor failed to disprove that he shot the victim in self-defense.

Petitioner's claim is non-cognizable on habeas review. Under Michigan law, self-defense is an affirmative defense. *See People v. Dupree,* 486 Mich. 693, 704, 712, 788 N.W. 2d 399 (2010). "An affirmative defense, like self-defense, 'admits the crime but seeks to excuse or justify its commission. It does not negate specific elements of the crime.'" *People v. Reese*, 491 Mich.

127, 155, n. 76, 815 N.W.2d 85 (2012)(quoting *Dupree,* 486 Mich. at 704, n. 11).

Although under Michigan law the prosecutor is required to disprove a claim of

self-defense or defense of others, *See People v. Watts*, 61 Mich. App. 309, 311,

232 N.W.2d 396, 398 (1975), "[p]roof of the nonexistence of all affirmative

defenses has never been constitutionally required...." *See Smith v. United*

*States,*133 S. Ct. 714, 719 (2013)(quoting *Patterson v. New York*, 432 U.S. 197,

210 (1977)).  The Supreme Court and the Court of Appeals for the Sixth Circuit

have rejected the argument that the Constitution requires the prosecution to

disprove self-defense beyond a reasonable doubt. *See Gilmore v. Taylor*, 508

U.S. 333, 359 (1993)(Blackmun, J., dissenting)("In those States in which

self-defense is an affirmative defense to murder, the Constitution does not

require that the prosecution disprove self-defense beyond a reasonable doubt");

*Martin v. Ohio*, 480 U.S. 228, 233-36 (1987); *see also Allen v. Redman*, 858 F.

2d 1194, 1197 (6th Cir.1988)(explaining that habeas review of

sufficiency-of-the-evidence claims is limited to elements of the crimes as defined

by state law and citing *Engle v. Isaac*, 456 U.S. 107 (1982), and *Duffy v. Foltz*,

804 F.2d 50 (6th Cir. 1986)).  Therefore, "the due process 'sufficient evidence'

guarantee does not implicate affirmative defenses, because proof supportive of

an affirmative defense cannot detract from proof beyond a reasonable doubt that

the accused had committed the requisite elements of the crime." *Caldwell v.*

*Russell,* 181 F.3d 731, 740 (6th Cir. 1999).  Petitioner's claim that the prosecutor

failed to disprove his affirmative defense is non-cognizable on habeas review. *Id.; Allen v. Redman,* 858 F. 2d at 1200.

Moreover, even if this Court were to determine that petitioner's claim was cognizable, he would not be entitled to habeas relief.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an

objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S. Ct. 2060, 2065 (2012).

Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F. 2d 675, 679 (6th Cir. 1992). A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F. 3d 780, 788 (6th Cir. 2003).

Under Michigan law, one acts lawfully in self-defense if he or she honestly and reasonably believes that he is in danger of serious bodily harm or death, as judged by the circumstances as they appeared to the defendant at the time of the act. *Blanton v. Elo*, 186 F.3d 712, 713, n. 1 (6th Cir. 1999)(citing *People v. Heflin*, 434 Mich. 482, 456 N.W. 2d 10 (1990)). To be lawful self-defense, the evidence must show that: (1) the defendant honestly and reasonably believed

that he was in danger; (2) the danger feared was death or serious bodily harm or imminent forcible sexual penetration; (3) the action taken appeared at the time to be immediately necessary; and (4) the defendant was not the initial aggressor. *See Johnigan v. Elo,* 207 F. Supp. 2d 599, 608-09 (E.D. Mich. 2002)(citing *People v. Barker*, 437 Mich. 161, 165; 468 N.W. 2d 492 (1991); *People v. Kemp*, 202 Mich. App. 318, 322, 508 N.W.2d 184 (1993); *People v. Deason*, 148 Mich. App. 27, 31, 384 N.W.2d 72 (1985)). Under Michigan law, a defendant is not entitled to use any more force than is necessary to defend himself. *Johnigan,* 207 F. Supp. 2d at 609 (citing *Kemp*, 202 Mich. App. at 322). "[T]he law of self-defense is based on necessity, and a killing or use of potentially lethal force will be condoned only when the killing or use of potentially lethal force was the only escape from death, serious bodily harm, or imminent forcible sexual penetration under the circumstances." *Johnigan,* 207 F. Supp. 2d at 609 (internal citation omitted).

Although there was, to be certain, evidence presented that supported petitioner's claim of self-defense, the prosecution also presented evidence from which a rational trier of fact could have concluded beyond a reasonable doubt that the prosecutor had rebutted petitioner's self-defense claim. Kenief Lynch testified that petitioner and Mr. Morgan got into an argument earlier in the night. Petitioner attacked Mr. Morgan and threw two punches. Club members separated the two men. Mr. Morgan asked Lynch to take his gun because he

did not want to kill petitioner. Lynch took the gun and gave it to the club president. Mr. Morgan remained upset and kept lifting his shirt up and yelling that he did not have a gun. Petitioner refused a club member's request to relinquish his gun. Petitioner also refused Lynch's request to give up his gun. Mr. Lynch testified that petitioner began moving toward Mr. Morgan and reached to his waist, pulled out his gun and shot the victim. Lynch attempted to grab petitioner's hand but he pulled away and shot Mr. Morgan. (Tr. 3/31/10, pp. 140-43, 145-51, 156-60, Tr. 4/1/10, p. 7).

Clothilda Jones was a member of the motorcycle club. Ms. Jones heard a commotion and came out to see petitioner and Mr. Morgan arguing. Petitioner yelled to Mr. Morgan to pull his gun at which point Ms. Jones informed petitioner that Mr. Morgan did not have a gun. About an hour later petitioner was glaring at Mr. Morgan, who lifted his shirt to show petitioner he did not have a gun. Mr. Morgan had given his gun to Jones' boyfriend, Franciso Calderin. An hour later Jones heard a shot but she did not see the shooting. (Tr. 3/31/10, pp. 19, 29-35, 43, 64).

Franscico Calderin testified to hearing Mr. Morgan state he did not have a gun before hearing a gunshot. Mr. Morgan told Calderin that petitioner had shot him. (Tr. 3/31/2010, pp. 84–87, 91).

A federal court reviewing a state court conviction on habeas review that is "faced with a record of historical facts that supports conflicting inferences must

presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Cavazos v. Smith,* 565 at 7 (quoting *Jackson v. Virginia,* 443 U.S. at 326). Although there was evidence to support petitioner's self-defense claim and petitioner has given interpretations to the evidence that differ from the state court's interpretation of the evidence, "in light of the deference to be accorded to state-court factfinding under § 2254(e), as well as the traditional deference accorded to the jury's resolution of disputed factual issues," petitioner is unable to show that the state trial court, in rejecting petitioner's claim on post-conviction review, unreasonably determined that the prosecutor disproved petitioner's self-defense claim. *See Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000). Because the jury essentially chose to reject petitioner's testimony that he acted in self-defense, which is a credibility determination that this Court must defer to, petitioner is not entitled to habeas relief on his sufficiency of evidence claim. *See Johnson v. Hofbauer,* 159 F. Supp. 2d at 597-98.

In his sixth claim, petitioner contends that there was insufficient evidence to establish the elements of second-degree murder.

Under Michigan law, the elements of second-degree murder are: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. *See Stewart v. Wolfenbarger,* 595 F. 3d 647, 654 (6th Cir. 2010)(citing *People v. Goecke*, 457 Mich. 442 463-64, 579 N.W.2d 868 (1998)).

"[M]alice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Id.* (citing *People v. Aaron*, 409 Mich. 672, 728, 299 N.W.2d 304 (1980)). Additionally, "[t]he offense of second-degree murder 'does not require an actual intent to harm or kill, but only the intent to do an act that is in obvious disregard of life-endangering consequences.'" *Stewart,* 595 F. 3d at 658 (quoting *People v. Aldrich*, 246 Mich.App. 101, 123, 631 N.W.2d 67 (2001)).

The evidence established that petitioner shot the victim in the abdomen, causing his death. This evidence, if believed, would be sufficient to establish the elements of second-degree murder.

In his eighth claim, petitioner contends that the verdict went against the great weight of the evidence.

A federal habeas court has no power to grant habeas relief on the ground that a state conviction is against the great weight of the evidence. *Cukaj v. Warren,* 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004); *Dell v. Straub,* 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002); *See also Nash v. Eberlin*, 258 F. App'x. 761, 764, n. 4 (6th Cir. 2007)("a manifest-weight-of-the-evidence argument is a state-law argument")*; Artis v. Collins,* 14 F. App'x. 387 (6th Cir. 2001)(declining to grant certificate of appealability to habeas petitioner on claim that jury's verdict was against the manifest weight of the evidence). A claim that a verdict went

against the great weight of the evidence is not of constitutional dimension, for habeas corpus purposes, unless the record is so devoid of evidentiary support that a due process issue is raised. *Cukaj,* 305 F. Supp. 2d at 796; *See also Crenshaw v. Renico*, 261 F. Supp. 2d 826, 834 (E.D. Mich. 2003). The test for habeas relief is not whether the verdict was against the great weight of the evidence, but whether there was any evidence to support it. *Dell,* 194 F. Supp. 2d at 648. As long as there is sufficient evidence to convict petitioner of these crimes, the fact that the verdict may have gone against the great weight of the evidence would not entitle him to habeas relief. *Id.*

In his tenth claim, petitioner argues that the trial court erred in failing to direct a verdict of acquittal on the original first-degree premeditated murder charge, because there was insufficient evidence of premeditation and deliberation to submit the charge to the jury.

Petitioner was convicted of the lesser included offense of second-degree murder.

"[C]learly established Supreme Court law provides that a defendant has a right not to be *convicted* except upon proof of every element of a crime beyond a reasonable doubt; the Supreme Court has never held that the submission of a charge, upon which there is insufficient evidence, violates a defendant's constitutional rights where the defendant is acquitted of that charge." *Long v. Stovall*, 450 F. Supp. 2d 746, 752 (E.D. Mich. 2006)(quoting *Skrzycki v. Lafler*,

347 F. Supp. 2d 448, 453 (E.D. Mich. 2004)(emphasis original)*; See also Aldrich v. Bock,* 327 F. Supp. 2d 743, 761-62 (E.D. Mich. 2004). A number of cases have held that the submission to a jury of a criminal charge constitutes harmless error where the habeas petitioner is acquitted of that charge. *Daniels v. Burke*, 83 F. 3d 760, 765, fn. 4 (6th Cir. 1996); *Long,* 450 F. Supp. 2d at 752; *Aldrich,* 327 F. Supp. 2d at 761; *Johnson v. Hofbauer,* 159 F. Supp. 2d at 596; *But see Williams v. Jones*, 231 F. Supp. 2d 586, 593-94 (E.D.Mich. 2002)(finding this claim cognizable). In light of the fact that petitioner was acquitted of the first-degree premeditated murder charge and only found guilty of the lesser included offense of second-degree murder, any error in submitting the first-degree premeditated murder charge to the jury would not entitle petitioner to habeas relief. *See King v. Trippett*, 27 F. App'x. 506, 510 (6th Cir. 2001).

**E. Claim # 7. The perjury claim.**

Petitioner claims that Ms. Jones committed perjury during defense counsel's cross-examination of her. When Ms. Jones was asked by defense counsel why she did not tell the police that she had witnessed the fight between petitioner and Morgan, Jones stated:

> I don't think I had to tell the police anything. He shot the man and the man is dead. I thought it was an open and shut case.

> (Tr. 3/31/10, p. 48).

The deliberate deception of a court and jurors by the presentation of known and false evidence is incompatible with the rudimentary demands of justice. *Giglio v. United States*, 405 U.S. 150, 153 (1972). There is also a denial of due process when the prosecutor allows false evidence or testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269 (1959)(internal citations omitted). To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F. 3d 320, 343 (6th Cir. 1998). However, a habeas petitioner must show that a witness' statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins*, 209 F. 3d 486, 517-18 (6th Cir. 2000).

Ms. Jones did not testify falsely about material facts. Instead, the witness was asked why she did not call the police after witnessing the shooting and she replied that she believed that she did not need to do so because this was "an open and shut case." "An allegation of perjury as to a 'matter of perception' fails absent 'conclusive proof' that the witness testified falsely as to his belief." *U.S. v. Robinson-Gordon*, 418 F. App'x. 173, 177 (4th Cir. 2011)(citing *United States v. Derrick*, 163 F. 3d 799, 828 (4th Cir. 1998)). Petitioner is not entitled to habeas

29

relief on his claim because he has presented no evidence that Ms. Jones

testified falsely concerning her subjective belief that she did not need to speak

with the police, nor has he shown any evidence that the prosecutor would have

known that Ms. Jones was testifying falsely about her subjective belief on this

subject. *Id.* Conclusory allegations of perjury in a habeas corpus petition must

be corroborated by some factual evidence. *Barnett v. United States*, 439 F.2d

801, 802 (6th Cir.1971). Petitioner is not entitled to relief on his seventh claim.

### F. Claim # 9. The jury instruction claim.

Petitioner next claims that his right to a fair trial was violated when the trial

court instructed the jury to consider whether petitioner could have safely

retreated prior to using deadly force.

The judge gave the jurors the following instruction:

> A person can use deadly force in self-defense, only when it is necessary to do so. If the defendant could have safely retreated but did not do so, you may consider that fact in deciding whether the defendant honestly and reasonably believed he needed to use deadly force in self defense. However, a person is never required to retreat from a sudden fierce and violent attack, nor is he required to retreat from an attacker he reasonably believes is about to use a deadly weapon.

(Tr. 4/7/10, p. 106).

The burden of demonstrating that an erroneous instruction was so

prejudicial that it will support a collateral attack upon the constitutional validity of

a state court conviction is even greater than the showing required in a direct

appeal.  The question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned," and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbee*, 431 U.S. 145, 154-155 (1977).  The challenged instruction must not be judged in isolation but must be considered in the context of the entire jury charge. *Jones v. United States*, 527 U.S. 373, 391 (1999).  Further, any ambiguity, inconsistency or deficiency in a jury instruction does not by itself necessarily constitute a due process violation. *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009).  It is not enough that there might be some "slight possibility" that the jury misapplied the instruction. *Id.* at 191.

In the present case, the state judge, in denying petitioner's claim on post-conviction review, concluded that the instruction about the duty to retreat accurately reflected Michigan law concerning the duty to retreat. *People v. Williams*, No. 09-031564-01-FC, Slip. Op. at * 13-15.  Federal courts are bound by the state courts' interpretation of their own laws. *See Mullaney v. Wilbur*, 421 U.S. 684, 690-91 (1975).  The nature of a particular jury instruction that is given is a matter of state law, and a federal court is not at liberty to grant a writ of habeas corpus simply because the federal court finds the state court's decision was incorrect under state law. *Newton v. Million*, 349 F.3d 873, 879 (6th Cir.

2003).  Because the judge found that it was proper under Michigan law to have instructed the jurors on the duty to retreat, this Court must defer to that determination and cannot question it. *See Seymour v. Walker*, 224 F. 3d at 558.

More importantly, when viewed in its entirety, the instruction as given, did not impose a duty to retreat upon the defendant if the jury determined that he was the victim of a sudden, violent attack, as petitioner suggests.  In fact, the instruction did just the opposite, namely, it advised the jurors that petitioner did not have a duty to retreat if he was the victim of a sudden, violent attack. Because the judge's instruction regarding the applicability of the duty to retreat was consistent with the law of self-defense in Michigan, the judge did not deny petitioner the due process of law by so instructing the jury. *See Johanson v. Pung,* 795 F. 2d 48, 49 (8th Cir. 1986).

### G.  Claim # 11.  The ineffective assistance of appellate counsel claim.

Petitioner claims that appellate counsel was ineffective for failing to raise his third through tenth and twelfth claims on his appeal of right.

Petitioner's third through tenth and his twelfth claims are without merit. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).  Because none of these claims can be shown to be meritorious, appellate counsel was not ineffective in his handling of petitioner's direct appeal.

**H. Claim # 12. The cumulative errors claim.**

Petitioner lastly alleges that he is entitled to habeas relief because of cumulative error. The Sixth Circuit has noted that the United States Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle,* 291 F. 3d 416, 447 (6th Cir. 2002). Therefore, petitioner is not entitled to habeas relief on his cumulative errors claim. *Id.; See also Dorchy v. Jones,* 320 F. Supp. 2d 564, 581 (E.D. Mich. 2004); *aff'd* 398 F. 3d 783 (6th Cir. 2005).

**I. A certificate of appealability.**

A habeas petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction. [2] 28 U.S.C. §§ 2253(c)(1)(A), (B). A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v.*

---

[2] Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.

*McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37.

The Court will deny a certificate of appealability, because jurists of reason would not find the Court's resolution of the claims to be debatable.

Although this Court will deny a certificate of appealability to petitioner, the standard for granting an application for leave to proceed *in forma pauperis* (IFP) is a lower standard than the standard for certificates of appealability. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002)(citing *United States v. Youngblood*, 116 F. 3d 1113, 1115 (5th Cir. 1997)). Whereas a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster,* 208 F. Supp. 2d at 765. Although jurists of reason would not debate this Court's resolution of petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and petitioner may proceed *in forma*

*pauperis* on appeal. *Id.*

## IV. CONCLUSION

For the reasons stated above, this Court concludes that Petitioner

Williams is not entitled to federal-habeas relief on the claims presented in his

petition.

**IT IS ORDERED:**

**(1)** The petition for writ of habeas corpus is **DENIED WITH PREJUDICE**. (Dkt. # 1).

**(2)** A certificate of appealability is **DENIED**.

**(3)** Petitioner is granted leave to appeal *in forma pauperis.*


S/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge

Dated: April 26, 2017

I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on April 28, 2017, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Assistant